**SO ORDERED.**

**SIGNED this 10 day of May, 2023.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| LAMEAN GODWYN, | 22-00762-5-JNC |
| | CHAPTER 13 |
| DEBTOR. | |

## MEMORANDUM OPINION

On April 17, 2023, the Order on Plan Objection, Valuation of Real Property, and Adequate Protection (Dkt. 108; the "Order") was entered in this case.[1] The Order addressed and resolved the Motion for Relief pursuant to 11 U.S.C. § 362 (Dkt. 24; the "Motion") filed July 6, 2022, by Reverse Mortgage Funding, LLC ("Creditor");[2] the Response in Opposition (Dkt. 25) to the Motion, filed by the debtor, Lamean Godwyn ("Debtor"), on July 20, 2022; and Creditor's continuing Objection to Confirmation (Dkt. 61) filed October 25, 2022, to Debtor's chapter 13 plan (Dkt. 15) as amended (Dkts. 56, 68, 104, and 107) (collectively, the "Plan") filed throughout the pendency of this case.

---

[1] The findings of fact listed in the Order are incorporated by reference, and a summary of those facts and the court's findings are contained in this memorandum.

[2] Proof of Claim 1-1 (the "Claim") in the amount of $103,654.65 filed by Reverse Mortgage Funding, LLC, was transferred and assigned to Federal National Mortgage Association by the Amended Assignment of Claim (Dkt. 89) filed on February 13, 2023. The Motion was also assigned to Federal National Mortgage Association. Reverse Mortgage Funding, LLC, and Federal National Mortgage Association are collectively referred to as "Creditor."

An evidentiary hearing (the "Hearing") on the related matters was held in Greenville, North Carolina, at 10:00 a.m. on March 14, 2023. Attorneys appearing were H. Frank Allen for Debtor, J. Martin Page for Creditor, and Isaac A. Johnston for the chapter 13 trustee. After expert and fact witness testimony and arguments of counsel, the court took the matters under advisement and requested briefs. Creditor filed its Continued Objection to Confirmation and Memorandum of Law (Dkt. 102) on March 24, 2023. In response, Debtor filed his Reply to Creditor's Brief (Dkt. 105) on March 31, 2023. In the interest of time, the Order was issued. This Memorandum Opinion explains the legal foundation for that ruling.

## JURISDICTION

Pursuant to 28 U.S.C. §§ 157 and 1334, these contested matters are subject to the jurisdiction of this court and are core proceedings within the meaning of 28 U.S.C. § 157(b)(2). This Court has the authority to hear the matters pursuant to General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

## FACTUAL BACKGROUND

The full factual background is contained in the Order. For ease of reference, a summary of the facts as found therein follows.

Debtor filed a petition for relief under chapter 13 of the United States Bankruptcy Code on April 7, 2022 (the "Petition Date"). Schedule A/B of his Schedules and Statements (Dkt. 14) filed May 20, 2022, lists an inherited one-fifth (1/5th) ownership interest, as a tenant in common, in residential real property located at 105 Walston Street, Princeville, NC 27886 (the "Property"). His mother, Mrs. Emma Godwyn, died intestate, and his four siblings hold the remaining four-fifths (4/5ths) undivided interest. Debtor resides in the Property; none of the siblings live there.

The Property is encumbered by a deed of trust granted by Mrs. Godwyn recorded January 12, 2010, in Book 1547, Page 1156 in the records of Edgecombe County, North Carolina, Registry. It secures a reverse mortgage loan promissory note of even date (the "Note"), made originally to Live Well Financial, Inc., in the original amount of up to $148,500.00. Neither Debtor nor any of his siblings signed the Note. It contained an acceleration clause triggered by the death of Mrs. Godwyn on March 29, 2019, causing the Note to become due and payable in full. Because only the deceased Emma Godwyn signed the Note, Creditor has no standing or ability to assert or collect by legal process an unsecured deficiency claim against Debtor or his siblings.

Creditor's calculation of a $103,654.65 loan balance is stipulated as correct as of the Petition Date. No payments have been made on the Note. Debtor concedes Creditor holds a valid, accelerated claim secured by the Property. At the Hearing, Debtor asserted the Property was worth $86,000 as of the Petition Date, but Creditor assessed the fair market value at $136,000, considerably more than its payoff. For the reasons stated in the Order, the court found the correct value to be $96,236. Debtor has accepted the court's valuation from the Order, and his amended plan proposes to pay the $96,236 valuation in full (plus accumulated interest) from the Petition Date by a sale or refinance of the Property closing approximately four months after confirmation. *See* Debtor's Amended Chapter 13 Plan; Dkt. 111, ¶¶ 2.2, 3.3, and 8.1.

## LAW AND ANALYSIS

### A. Position of the Parties

Pursuant to 11 U.S.C. §§ 1322(c)(2) and 1325(a)(5)(B), the Plan seeks to modify the claim amount and payment terms of Creditor's Claim even though it is secured by residential real estate. Debtor specifically seeks to take advantage of an exception to the anti-modification clause for residential property mortgages as discussed below. Because the loan at issue is nonrecourse,

3

Debtor contends the petition date value of the Property is the maximum sum Creditor is entitled to recover in this chapter 13 case. Creditor counters that (1) the anti-modification clauses in chapter 13 apply, thereby preventing any reduction of the Claim; (2) the petition date value of the Property exceeds the payoff balance of the Note; and (3) because Debtor only owns a partial interest in the Property, the court lacks jurisdiction to reduce the balance of the Note as to the nonbankruptcy interest holders. The second defense raised by Creditor is the factual valuation determination explained in detail in the Order and summarized in Section C below. The first and third defenses are legal questions discussed in Sections B and D below.

### B. Modification of Payment Terms for Secured Claims

To obtain plan confirmation, a debtor must satisfy all of the nine provisions contained in 11 U.S.C. §1325(a). Subsection (5) is particularly relevant here as it addresses handling secured claim in chapter 13 plans. The statute provides three confirmation avenues for treatment of secured claims.  A secured claim may be amended with creditor consent (subsection (A)), or the collateral can be surrendered to the creditor (subsection (C)), leaving it with, at most, an unsecured deficiency claim. Neither of those alternatives apply here.

Instead, the secured debt may receive plan payments under subsection (B), which provides:

(B)(i) the plan provides that—

>  (I) **the holder of such claim retain the lien securing such claim until the earlier of—**
>
>> (aa) **the payment of the underlying debt determined under nonbankruptcy law**; or
>>
>> (bb) discharge under section 1328; and
>
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

4

> (ii) **the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and**
>
> (iii) **if**—
>
>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts….

11 U.S.C. § 1325 (a)(5)(B)(i) – (iii) (emphasis added).

Nothing else showing, §1325(a)(5)(B)(ii) by its plain language allows the reduction of a secured claim to the value of the asset as of the petition date if that value is less than the balance due. However, under 11 U.S.C. § 1322(b)(2), sometimes referred to as the "anti-modification" clause, a chapter 13 debtor is prohibited from modifying the rights of lenders holding a security interest in real property serving as the debtor's principal residence. *Ennis v. Green Tree Servicing, LLC*, 558 F.3d 343, 344 (4th Cir. 2009); *see also In re Brown*, 428 B.R. 672 (Bankr. D.S.C. 2010).

This anti-modification clause, however, is subject to its own exception. This "exception to the exception" is codified at 11 U.S.C. § 1322(c)(2), providing:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
> …
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). This subsection allows a debtor with a secured claim against his principal residence to take advantage of modification under § 1325(a)(5) only "where the last payment according to the original payment schedule is due prior to the proposed final payment under the debtor's plan." *In re Griffin*, 489 B.R. 638, 643 (Bankr. D. Md. 2013).

In the present case, however, neither Debtor nor any of his siblings signed the Note or a guaranty, leaving no one with personal contractual liability to satisfy the obligation. Creditor

5

concedes that it holds a nonrecourse note, meaning it "can only collect by foreclosing its interest in the property." *In re Sandoval*, 640 B.R. 165, 169 (Bankr. E.D. Wis. 2022). Debtor adopts the holding from *Griffin* and maintains that payment of an accelerated secured reverse mortgage claim can be modified under § 1322(c)(2) to the Property's petition date value if the plan provides for payment in full of the claim within its term. "Reverse mortgages that have matured due to the death of the original mortgagor" prepetition fit within the anti-modification exception found at § 1322(c)(2). 8 Collier on Bankruptcy ¶1322.17 (Richard Levin & Henry J. Sommer eds., 16th ed. 2023). *See also Sandoval*, 640 B.R. at 179-80; *In re Michaud*, 548 B.R. 582 (Bankr. S.D. Fla. 2016); *Griffin*, 489 B.R. at 643; *In re Domingue*, 2012 Bankr. LEXIS 4182 (Bankr. S.D. Tex. Sept. 10, 2012). "The death of the borrower is the predicted event at the heart of a reverse mortgage; it is not the same as a borrower defaulting…" triggering the creditor's option to accelerate the debt. *Michaud*, 548 B.R. at 584. "In other words, the parties to the note and mortgage intended and expected that the debt would be repaid when the borrower died (or the property was sold)." *Sandoval*, 640 B.R. at 179.

The case at hand reflects *Griffin's* key facts. As in the present case, *Griffin* concerned a reverse mortgage secured solely by property that a debtor and his non-debtor sister inherited from his mother prepetition. Upon the mother's prepetition death, the underlying debt was automatically accelerated by the promissory note terms, and neither the debtor nor the sibling(s) had signed the note. His proposed plan sought to reduce the debt to the property's present value to be paid over the plan's five-year life. The *Griffin* creditor also objected under the anti-modification statute and sought relief from the automatic stay of 11 U.S.C. § 362(a) to foreclose on the full note balance in state court. The creditor maintained § 1322(b)(2) prevented modification of the secured loan because the *Griffin* debtor was residing within the collateral real estate as of the filing date and

6

because the non-debtor owner held a one-half interest in the subject property. As is the case here, the *Griffin* debtor sought to reduce the mortgage claim under § 1322(c)(2)'s exception and override the no modification rule from § 1322(b)(2). *Griffin*, 489 B.R. at 639-41. The *Griffin* court asked, as must this court, "Can payment terms under a reverse mortgage secured by a principal residence be modified under a chapter 13 plan contrary to the mortgage's express language?" *Id.* at 641.

In answer, the *Griffin* court rejected creditor's argument and held that § 1322(c)(2) permits modification of the payment terms for a nonrecourse, secured claim accelerated prepetition such as a reverse mortgage. *Id.* at 644. The court reasoned,

> … it was precisely because the note had been accelerated that "the last payment" on the debt had been "moved to a date that was prior to the date of the final payment" that would be made under the Debtor's proposed plan thus bringing the secured claim within the reach of Section 1322(c)(2).

*Id.* at 642 (*citing Brown*, 428 B.R. at 676).

This court agrees with that reasoning. The prepetition acceleration of the Note balance triggered by the death of the non-bankruptcy debtor-borrower forced the indebtedness "last payment" to become due prepetition. This timing permits the Debtor to modify the payment of the secured claim under § 1322(c)(2). "[I]t would seem to require a real stretch of interpretation to exclude the Deed of Trust in this case whose 'final payment' has, by its own terms and the creditor's assertion, already come due." *Griffin,* 489 B.R. at 643.

### C. Valuation and the Debt Amount

The next question, which was answered in factual detail in the Order, is the amount of the debt. As in *Griffin*, Creditor's state law collection rights are limited to foreclosure of the Property; it cannot sue the Debtor or his siblings on the Note. "[A]ll the [Creditor] is entitled to under nonbankruptcy law is an amount equal to the value of the property." *In re Berry*, No. 22-22162-GMH, 2023 WL 2482645 at *3 (Bankr. E.D. Wis. Mar. 13, 2023). Recognizing that the Note was

7

properly accelerated and therefore must be paid in full during the course of the Plan, to avail himself of the benefits of §§ 1322(c)(2) and 1325(a)(5), Debtor sought a valuation determination for the Property, which the court assessed at $96,236. If the Plan, as now amended, is confirmed and its proposed lump sum payment is timely made (in about four months), the Claim will be satisfied in full prior to completion of the Plan.[3]

Because Creditor will collect all that it possibly can of a fully due prepetition debt (subject to plan performance as projected) Debtor satisfies the requirements of § 1325(a)(5)(B). However, that assumes the court has sufficient jurisdiction over the entire property interest.

### D. The Court's Jurisdiction and Power to Determine Property Value

Debtor's first proposed plan valued the Property, and thereby the Claim, at much less than the value asserted by Creditor. At the Hearing, Debtor and Creditor provided fact witnesses, experts, and appraisals, assigning markedly different values to the Property. As detailed in the Order, Debtor undervalued the Property at $86,000, whereas Creditor overvalued it at $136,000. Nevertheless, "[b]ankruptcy courts are quite accustomed to this scenario and are equipped to undertake the credibility assessment and layered fact-finding necessitated by it." *In re Bate Land & Timber, LLC*, 523 B.R. 483, 498 (Bankr. E.D.N.C. 2015).

Further, the court has a duty to value property under § 506 even where the appraisals reach very different conclusions:

> The extreme differential does not, however, preclude valuation. It is a fact that […] properties have a fair market value. It is also a fact that determining what that value is, can be difficult. A third fact is this: The court has a duty to value property pursuant to § 506, that duty is not limited to those instances where valuation is easy

---

[3] Ordinarily, Subsection 1325(a)(5)(B)'s periodic payment provision is at a debtor's option. *See* 11 U.S.C. 1325(a)(5)(B)(iii)(I) ("**if** […] property to be distributed pursuant to this subsection is **in the form of periodic payments**, such payments shall be in equal monthly amounts…."). Debtor therefore could amortize the $96,232 and pay it over the full life of a plan, up to sixty months. However, because the Plan proposes one lump sum payment satisfying the Claim balance, the conditional provision requiring equal monthly installments is not applicable, other than the intervening adequate protection monthly interest payments required in the Order.

> or uncontested, and that duty encompasses those instances where the economy is uncertain and comparable sales are scarce. The fact that two appraisers have arrived at vastly different values cannot relieve the court of its obligation.

*In re Bath Bridgewater S., LLC*, Case No. 11–06817–8–SWH, 2012 WL 4325650, at *4 (Bankr. E.D.N.C. Sept. 20, 2012).

The value of a secured claim is "determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). *See also* 4 Collier on Bankruptcy ¶506.03 (Richard Levin & Henry J. Sommer eds., 16th ed. 2023) ("[S]ection 506(a) is often relevant in establishing the amount that must be paid to a secured creditor pursuant to a plan under chapter[…] 13."). Valuation of property is a question of fact resolvable by an evidentiary hearing on a plan objection. *Berry*, 2023 WL 2482645 at *4.

A valuation determination can be further complicated when, as here, a debtor owns only a fractional interest in the collateral. Pursuant to 11 U.S.C. § 541(a)(1), upon the commencement of a bankruptcy case of any chapter triggered by the filing of a voluntary petition, a debtor's estate is formed and "comprised of … all legal or equitable interests of the debtor in property…." Here, at the Petition Date, Debtor owned a one-fifth (1/5th) undivided interest in the Property, with the remaining four-fifths (4/5th) interest owned by his four siblings. The siblings' interests exist beyond the scope of the bankruptcy estate with respect to the reach of Debtor's creditors. *See In re Veneziale*, 267 B.R. 695, 701 (Bankr. E.D. Penn. 2001) (finding a debtor's one-half interest in real property—shared with a non-bankruptcy filing co-owner—limited the bankruptcy estate interest to one-half of the value of the subject property). Creditor questions the court's jurisdiction to value the entire Property where only a partial interest falls within the bankruptcy estate. Creditor

9

maintains that if the debt is subject to modification, the change affects Debtor's twenty percent undivided interest, and the decision would have no bearing over the balance of the debt.[4]

Despite the bankruptcy estate's fractional interest, in assessing a chapter 11, 12 or 13 plan, bankruptcy court jurisdiction is not restricted to merely the extent of a debtor's ownership interest in jointly held real property once an interested party elects to file a proof of claim. *See Berry*, 2023 WL 2482645 at *2; *see also Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 472 (1947) ("It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences…."). By filing a proof of claim based on the creditor's right to collect from property in which a debtor holds an undivided interest, but not the full interest, that creditor has voluntarily submitted itself to the bankruptcy process, including valuation of assets. *See Johnson v. Home State Bank*, 501 U.S. 78, 84–87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (holding a nonrecourse right to collect from a debtor's property is a "claim" subject to inclusion in a chapter 13 plan).

As a voluntary participant in the claims process, a creditor "cannot oppose the debtor's plan to pay that claim" based on the proposed plan's treatment of the claim, in accordance with § 1325(a)(5)(B), so long as the debtor's plan will pay the claim in full. *Berry*, 2023 WL 2482645 at *2 ("A chapter 13 plan unquestionably can provide for payment of a claim from the debtor's future income over the course of the plan term, § 1322(b)(8), and modify the rights of holders of secured claims in the manner authorized by § 1322(b)(2) and (c)(2)."). A creditor holding a

---

[4] From the Hearing:
    Court: "Is there any issue with the court's jurisdiction to determine the full value given that the Debtor owns twenty percent? Is there any objection to that?"
    Creditor counsel: "Yes, your honor. That is a question we have…. Four-fifths of the property is not property of the estate."
    Court: "But the Debtor's twenty percent is affected…. And you run the risk if I do find a value of that being inconsistent with say a state court determination later on as an example, right?"
    Creditor counsel: "Yes, your honor."
(Hearing 1:11:02 - 1:11:44, March 14, 2023, Dkt. 99).

nonrecourse note, which can be enforced only through the sale of the collateral under non-bankruptcy law, is entitled to the amount equal to the value of the property. *Id.* at *3. "Modification of the Deed of Trust under the [d]ebtor's plan will positively affect the [d]ebtor's [co-heir's] interests as it should help to preserve [that] ownership interest in the real estate. . . . [O]utcomes in bankruptcy frequently have an impact on non-debtors and that, standing alone, is insufficient to thwart the strategy." *Griffin*, 489 B.R. at 644.[5]

This court finds the reasoning from *Berry*, *Griffin*, and *Sandoval* persuasive. This recovery is equal to the entire amount Creditor would receive outside of bankruptcy. Pursuant to 11 U.S.C. §§ 1322(c)(2) and 1325(a)(5), a debtor may modify the payment terms of accelerated, secured claims. A plan providing for payment of the full value of a debtor's principal residence does not necessarily "cramdown" the creditor's lien because the value of the property is the only amount a nonrecourse creditor is entitled to recover. The Bankruptcy Code "treats a claim as secured only to the extent that the creditor has a lien on property in which the debtor's bankruptcy estate—'comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case,' § 541(a)(1)—has an interest." *Berry*, 2023 WL 2482645, at *2 (citing 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ....")).

The Plan as amended correctly provides for the full value of Creditor's Claim, which under nonbankruptcy law is limited to the value of the Property on the Petition Date plus postpetition interest. The Claim is premised solely on *in rem* rights to collect from the Property, not personal

---

[5] *But see Veneziale*, 267 B.R. at 698 (citing 11 U.S.C. § 506(a)) (holding in the case where a debtor and her non-filing partner were both borrowers under the note and mortgage–establishing personal liability and recourse for the creditor outside of bankruptcy–that the creditor's "secured claim is limited to 'the value of such creditors' interest in the estate's interest in such property.'").

11

liability of the Debtor or his siblings. Upon Plan performance, Creditor will have been paid all it could collect in any court. Once Creditor filed its Claim on June 9, 2022, it submitted to the general jurisdiction of the bankruptcy court, including its right of collection. Having done so, Creditor acknowledged that if paid the full value in the bankruptcy case in circumstances of no personal liability recourse, it is entitled to nothing more. *See Berry*, 2023 WL 2482645 at *2. To oppose Debtor's Plan's proposal to pay the Claim to full extent legally permissible is pointless and nonsensical.[6]  It can collect nothing elsewhere. Creditor cannot have its proverbial Claim cake and eat nonexistent icing too.

## **CONCLUSION**

Based on the foregoing, this court is afforded the power to make a valuation determination for the Property in its entirety pursuant to 11 U.S.C. § 506 and the claims allowance process. The Order stands unabated. The case will proceed to the chapter 13 plan confirmation stage.

**END OF DOCUMENT**

---

[6] Creditors in this situation are not mere hostages to the whims of a debtor's plan either. They retain objection rights if that plan does not propose payment of the full collateral value. For example, as found in the Order, here the Debtor undervalued the Property by about $10,000 in his original chapter 13 plan, Creditor objected and obtained the higher valuation plus postpetition interest. Debtor accordingly amended his proposed plan to cover that shortfall.